# 25-0643-cv

## United States Court of Appeals

*for the*

## Second Circuit

---

JOSHUA N. TERRY, ACIS CAPITAL MANAGEMENT,

*Plaintiffs-Counter-Defendants-Appellees,*

BRIGADE CAPITAL MANAGEMENT, LP,

*Counter-Defendant-Appellee,*

U.S. BANK NATIONAL ASSOCIATION, in its capacity as Trustee,

*Plaintiff,*

*(For Continuation of Caption See Inside Cover)*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

## REPLY BRIEF FOR
## COUNTER-CLAIMANT-APPELLANT NHF TRS, LLC
## AND DEFENDANT-COUNTER-CLAIMANT-APPELLANT
## NEXPOINT DIVERSIFIED REAL ESTATE TRUST

MAZIN A. SBAITI
GRIFFIN S. RUBIN
SBAITI & COMPANY PLLC
*Attorneys for Counter-Claimant -
   Appellant NHF TRS, LLC and
   Defendant-Counter-Claimant-
   Appellant Nexpoint Diversified
   Real Estate Trust*
2200 Ross Avenue, Suite 4900W
Dallas, Texas 75201
(214) 432-2899

CP COUNSEL PRESS  (800) 4-APPEAL • (514857)

– v. –

NEXPOINT DIVERSIFIED REAL ESTATE TRUST,

*Defendant-Counter-Claimant-Appellant,*

NHF TRS, LLC,

*Counter-Claimant-Appellant,*

THE CHARITABLE DONOR ADVISED FUND, L.P., CLO HOLDCO, LTD.,

*Defendants-Counter-Claimants,*

HIGHLAND CLO FUNDING LTD.,

*Counter-Defendant.*

# TABLE OF CONTENTS

TABLE OF CONTENTS.........................................................................i

TABLE OF AUTHORITES .........................................................................

I.    PRELIMINARY STATEMENT ................................................1

II.   ARGUMENT.........................................................................3

    A.   The Tortious Interference Claim Should Survive ............................3

        1.   The Notes Expressly Incorporate The Indenture ..................3

        2.   NexPoint's Argument Is Not Waived And Is Properly Before This Court....................................................5

        3.   Appellees' Alternative Theories Are Factbound And Legally Flawed........................................................6

    B.   Appellees Owe Direct Fiduciary Duties Under New York And Federal Law .........................................................7

        1.   *Oddo* Supports Appellants, Not Appellees............................7

        2.   A Fiduciary Relationship Exists Because A Trust Or Co-Trustee Relationship Exists ..............................8

        3.   Common-Law Duties Also Attach ........................................9

        4.   The Investment Advisers Act Codified Appellees' Duties Under New York Law........................................11

        5.   The Advisors Arguments Against Section 206(4) Fail........12

        6.   Terry and Brigade Are Alternatively Liable for Aiding And Abetting....................................................15

    C.   Certified Questions Are Appropriate ............................................15

    D.   Alternatively, Appellants Have Standing Under Cayman Law .....17

i

      E.     Appellees' Rule 23.1 Arguments Are Untimely ............................ 18

      F.     Appellees' Remaining Arguments Are Unavailing ...................... 19

III.    CONCLUSION................................................................................ 19

CERTIFICATE OF COMPLIANCE.................................................................. 20

CERTIFICATE OF SERVICE ......................................................................... 21

# TABLE OF AUTHORITIES

*AG Cap. Funding Partners, L.P. v. State St. Bank & Tr. Co.*,
    896 N.E.2d 61 (N.Y. 2008) .................................................................... 15-16

*Burghart v. Landau*,
    821 F. Supp. 173 (S.D.N.Y.), *aff'd*, 9 F.3d 1538 (2d Cir. 1993) .................. 18

*Eastman Kodak Co. v. STWB, Inc.*,
    452 F.3d 215 (2d Cir. 2006) ...................................................................... 5

*Fogel v. Chestnutt*,
    533 F.2d 731 (2d Cir. 1975) .................................................................... 19

*FTFLending, LLC v. Mavrides, Moyal, Packman & Sadkin, LLP*,
    165 N.Y.S.3d 692 (N.Y. App. Div. 2022) .................................................. 15

*Foster v. Churchill*,
    87 N.Y.2d 744 (1996) ................................................................................ 6

*Gilbert v. Comm'r*,
    262 F.2d 512 (2d Cir. 1959) .................................................................... 11

*Goldstein v. SEC*,
    451 F.3d 873 (D.C. Cir. 2006) ........................................................... 11, 14

*Horowitz v. Nat'l Gas & Elec., LLC*,
    2018 WL 4572244 (S.D.N.Y. Sept. 24, 2018) ............................................ 6

*In re Est. of Rubin*,
    540 N.Y.S.2d 944 (N.Y. Sur. Ct. 1989) ...................................................... 8

*Lamb v. Emhart Corp.*,
    47 F.3d 551 (2d Cir. 1995) ........................................................................ 3

*Lopes v. Rostad*,
    384 N.E.2d 673 (N.Y. 1978) .................................................................... 15

*Metro. W. Asset Mgmt., LLC v. Magnus Funding, Ltd.*,
    No. 03-CV-5589, 2004 U.S. Dist. LEXIS 11761
    (S.D.N.Y. June 24, 2004) ......................................................................... 10

*Oddo Asset Mgmt. v. Barclays Bank*, *PLC*,
    19 N.Y.3d 584 (2012) ...........................................................................*passim*

*PepsiCo P.R., Inc. v. Commissioner*,
    Nos. 13676-09, 13677-09, 2012 Tax Ct. Memo LEXIS 270 (TC. 2012) ....11

*Petróleos de Venez. S.A. v. MUFG Union Bank, N.A.*,
    51 F.4th 456 (2d Cir. 2022) ...........................................................16

*Schneider v. Lazard Frères & Co.*,
    552 N.Y.S.2d 571 (1st Dep't 1990) ..............................................10

*SEC v. Capital Gains Research Bureau*,
    375 U.S. 180 (1963) ......................................................................11

*Transamerica Mortg. Advisors (TAMA) v. Lewis*,
    444 U.S. 11 (1979) ........................................................................11

*V.R. Optics, LLC v. Peloton Interactive, Inc.*,
    2017 WL 3600427 (S.D.N.Y. Aug. 18, 2017)...................................6

## Statutes & Other Authorities

7C Charles Alan Wright et al., Federal Practice and Procedure,
    § 1836 (3d ed.) .............................................................................18

17 C.F.R. § 206 .......................................................................*passim*

17 C.F.R. § 272.206(4)-8 ................................................11, 12, 13

106 N.Y. Jur.2d Trusts § 348 .............................................................8

Prohibition of Fraud by Advisers to Certain Pooled Investment Vehicles, 72
Fed. Reg. 44,756 (Aug. 9, 2007)....................................................14

Restatement (Second) of Trusts § 185 ................................................8

iv

# I. PRELIMINARY STATEMENT

This case concerns subordinated investors in a Collateralized Loan Obligation or CLO, whom the district court determined are powerless to enforce the very protections that induced their investment. According to the Advisors,[1] this is what the parties intended when drafting the Indenture. They say the Indenture creates no meaningful obligations to investors like NexPoint; the duties promised therein are essentially unenforceable; and Cayman law bars any redress—even for self-dealing and waste. Each of these propositions is untenable under the law and, more to the point, contradicted by the record.

*First*, the Advisors' defense to tortious interference turns squarely on the argument that the Indenture's protections are not terms of the Notes. They concede that the Notes are contracts between the Noteholders and the makers of the Notes, and they concede that they are not parties to those Notes. The Advisors also do not dispute that the Indenture was meant to govern their conduct. Instead, they rely on *Northrop* and similar cases that turn on the absence of cross-references and attached agreements—none of which is on point. Here, the Indenture's terms are not only incorporated by reference into NexPoint's Note, they are physically embedded in the deal structure and essential—explicitly so— to NexPoint's rights as a "Noteholder". The Advisors all but concede the rest— that their actions are tantamount to tortious interference with NexPoint's rights.

---

[1] The defined terms in Appellants' opening brief are re-used herein.

1

*Second*, the Advisors misread *Oddo Asset Management*, which rejected fiduciary duties for a passive mezzanine noteholder. But NexPoint stands in the shoes of *Oddo's* "capital noteholders"—those who absorbed losses first, and only shared in the residual profits, and whom the court referred to as the equity holders, suggesting that fiduciary duties were owed to them. Here, NexPoint held the most junior, subordinated securities, bore first losses, and could only share in what was left over after all senior debt and expenses were paid—e.g., profits. That is sufficient under New York Law to confer standing.

*Third*, the Advisors' Cayman law arguments are equally flawed. They assert a blanket rule against minority standing but ignore the exceptions that squarely apply: personal rights and fraud on the minority. The district court's one-sentence ruling addressed neither. Nor do the Advisors rebut Mr. Patel's unrebutted opinion that standing exists under both exceptions.

*Finally*, the Advisors' effort to defeat NexPoint's tort claims rests entirely on their prior errors. Once fiduciary status, enforceability, and standing are properly recognized, claims for aiding and abetting, conversion, and negligence proceed as a matter of course.

At bottom, the Advisors argue that an investment vehicle may be structured to evade all meaningful accountability—even where investment advisors self-deal and waste assets that belong to investors. That theory would upend basic principles of New York and Cayman law, and cannot be reconciled with the record, the governing documents, or even the federal securities regime. The

judgment should be reversed.

## II. ARGUMENT

### A.    The Tortious Interference Claim Should Survive

The Advisors concede that NexPoint's tortious-interference claim turns on whether the Indenture is incorporated into the Notes. Appellees' BR. 15–21. Their position rests on three faulty premises: that the Notes lack sufficient language of incorporation; that NexPoint has waived its argument; and that the alleged interference was privileged. Each is unsupported by law or fact.

#### 1.    The Notes Expressly Incorporate The Indenture

Incorporation by reference under New York law requires only that the parties had knowledge of, and assented to, the incorporated terms. *Lamb v. Emhart Corp.*, 47 F.3d 551, 558 (2d Cir. 1995). That standard is plainly met here. The Advisors admit that the Indenture is referenced repeatedly in the Notes and that they were familiar with its terms.

The record shows twenty-eight references to the Indenture across ten pages of subordinated notes. Appellants' Br. 17. The Notes explicitly state that Noteholder rights are defined by the Indenture: "Reference is hereby made to the Indenture . . . for a statement of the respective rights . . . of the . . . Holders of the Notes[.]" A-5136–37. And the Notes expressly incorporate the Indenture's defined terms—many of which appear throughout the Notes themselves.

These are not "passing references," as the Advisors claim. Nor are they

3

merely "acknowledgements," as the district court's opinion says. Rather, they reflect the parties' manifest intent to define NexPoint's rights through the Indenture.

The Advisors concede that the Indenture and Notes were physically appended. Appellees' Br. 18. At a minimum, this amounts to some evidence of incorporation. And physical annexation is not the only evidence here, as the Advisors argue it is. Id. It is further confirmation of what the language and structure already show. The Indenture was necessarily part of the operative bargain.

This is not debatable. The Notes direct the reader to the Indenture for a statement of the Noteholders' rights. See Appellants' Br. 17-18; A-5136-37. The Advisors' response to this is a classic non-sequitur. They say,

> [T]here are multiple instances where the parties used phrasing like "incorporate by reference" or "shall have the meaning set forth in the Indenture." The parties' intent to incorporate in those circumstances is clear. But that or similar language is absent where the Note mentions the Indenture, confirming the parties did not intend to incorporate it by reference.

Appellees' BR. at 19 (citations omitted, emphasis added).

Obviously, "shall have the meaning set forth in the Indenture" is not truly absent every time the Notes mention the Indenture, leading one to wonder whether the argument is a Freudian slip. In fact, the argument would be comical if not so maddening—especially in light of the Notes' explicit incorporation of the Indenture's defined terms, A-5137, which are also peppered throughout the

text of the Notes.

At most, the Advisors' argument amounts to this: that the Notes incorporate only some parts of the Indenture, not all of it. But even that gets them nowhere because the Notes state explicitly that Noteholders' "rights" are set out in the Indenture. A-5136-37 ("Reference is hereby made to the Indenture . . . for a statement of the respective rights . . . of the . . . Holders of the Notes"). And Noteholder rights are precisely what is at issue.

### 2. NexPoint's Argument Is Not Waived And Is Properly Before This Court

NexPoint argued below that the Indenture is incorporated into the Notes. It now submits that the Advisors' construction of the documents—under which they may self-deal or waste CLO assets without constraint—would render the Notes illusory and therefore unenforceable.

The Advisors claim this is a new argument that should be deemed waived. But it is not new. It is simply an extension of NexPoint's existing argument: that the documents must be read together, and that the Advisors' contrary reading is not just flawed but legally unsustainable.

And even if it were a new framing, it would still be proper. The Second Circuit permits additional support for propositions raised below. *Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 221 (2d Cir. 2006). That is all NexPoint offers here: additional support for the proposition that the Indenture is incorporated— and that it must be enforced accordingly.

### 3. Appellees' Alternative Theories Are Factbound And Legally Flawed

Appellees urge affirmance on grounds the district court did not reach. Specifically, they argue that (i) the PMA, not the Indenture, governs the alleged misconduct; and (ii) the economic interest defense bars the tortious-interference claim. Neither argument holds up.

*First*, the PMA is silent on the conduct at issue, and NexPoint's allegations target interference with rights protected by the Indenture. A-9444, A-9455-59, A-9467-73. The PMA's silence cannot override that governing instrument.

*Second*, the economic interest defense fails because the pleadings do not establish that the Advisors acted in Acis 6's interest. On the contrary, NexPoint alleges that they acted in their own interest—extending the CLO's life and making trades to maximize fees, and preventing redemptions for their own benefit. A-9452, A-9455, A-9466-67, A-9475-76. That is the essence of self-dealing and waste.

The Advisors' own cases support NexPoint. *Horowitz v. Nat'l Gas & Elec., LLC*, 2018 WL 4572244, at *6 (S.D.N.Y. Sept. 24, 2018), rejected the economic interest defense where the interference benefited only the tortfeasor. *See also Foster v. Churchill*, 87 N.Y.2d 744, 751 (1996) (affirming post-trial judgment in absence of evidence "respondents' actions advanced to serve some personal interest); *V.R. Optics, LLC v. Peloton Interactive, Inc.*, 2017 WL 3600427, at *5 (S.D.N.Y. Aug. 18, 2017) ("The defense of economic interest does not apply,

however, where the allegedly interfering parties acted to protect their own interest"); *cf.* A-9437 (alleging that the Advisors "manage the portfolio for their own ends, extend the life of the existing portfolio to maximize fees earned, and prohibit the investors from realizing gains to which they are entitled").

NexPoint is aware of no authority holding that a party may shield self-dealing or waste through the economic interest doctrine—and the Advisors cite none.

## B. Appellees Owe Direct Fiduciary Duties Under New York And Federal Law

Appellees insist that NexPoint is a mere creditor and that *Oddo Asset Management v. Barclays Bank PLC*, 19 N.Y.3d 584 (2012) forecloses fiduciary duties to creditors. Appellees' Br. 35-41. That misreads *Oddo* and ignores the three independent fiduciary sources detailed in NexPoint's opening brief: a trust relationship, New York common law, and the Investment Advisers Act of 1940 (IAA).

### 1. *Oddo* Supports Appellants, Not Appellees

The Advisors misread *Oddo* as a blanket rejection of fiduciary duties in CLO structures. But *Oddo* draws a distinction between noteholders who are mere creditors and equity-like noteholders—and NexPoint falls into the latter category.

In *Oddo*, the Court of Appeals rejected fiduciary duties for mezzanine noteholders who (1) had a fixed return under their notes, (2) had no direct relationship with the manager, and (3) had expressly waived reliance. But it

distinguished those investors from the capital noteholders, who "absorbed the first losses [from the investment] and would share in the potential profits." *Id*. at 593. Those capital noteholders—despite being "noteholders"—were deemed "holders of equity" and, by implication, were entitled to fiduciary protections (in contrast to the mezzanine noteholders who were not). *Id*. at 592–93.

That describes NexPoint precisely. NexPoint held subordinated Notes in Acis 6. A-9444-47. It bore first losses. *Id*. It only stood to share in any upside after all debt and expenses were paid. *Id*. Therefore its returns were not fixed but purely contingent. And it relied explicitly and necessarily on ACM's discretionary management. A-9436, A-9442, A-9446-50. These are the hallmarks of equity participation and fiduciary entitlement under New York law.

Thus, far from foreclosing NexPoint's claim, *Oddo* provides the template for recognizing it. What follows are the three independent bases under New York and federal law for recognizing the existence of a direct fiduciary relationship here.

## 2. A Fiduciary Relationship Exists Because A Trust Or Co-Trustee Relationship Exists

Appellees do not dispute that the Indenture satisfies three of the four "certainties" required to form a trust under New York law: (i) an identifiable res (the CLO assets), (ii) ascertainable beneficiaries (the noteholders), and (iii) delivery. Their only objection is that U.S. Bank, not ACM, is the named trustee. But New York law recognizes co-trustees and de facto trustees—"shadow

fiduciaries"—whenever one party exercises the powers of a trustee. *In re Est. of Rubin*, 540 N.Y.S.2d 944, 947 (N.Y. Sur. Ct. 1989) (treating an advisor to a fiduciary as in the nature of a co- or quasi-trustee).

That is ACM, and through it, the other Advisors. It is the Advisors—not U.S. Bank—who selected the assets, executed trades, and determined expenses. Where a trustee delegates duties to another party, that delegate assumes fiduciary obligations. *See* Restatement (Second) of Trusts § 185; *see also* 106 N.Y. Jur.2d Trusts § 348 ("the relationship between a trustee and advisor is that of a co-trustee, with the advisor having the controlling power"). U.S. Bank's wholesale delegation to the Advisors elevates the Advisors' relationship and duties to beneficiaries as a matter of law.

The Advisors point to boilerplate disclaimers—like § 6.1(a)'s exclusion of implied covenants and the PMA's no-third-party-beneficiary clause—as barring fiduciary duties. But they merely disclaim contractual claims; they do not displace fiduciary obligations the common law imposes when one party undertakes control over assets for another's benefit. And further, it is notable that the Advisors seek to rely on these documents even after arguing that NexPoint is not a party or third-party beneficiary of any of them and therefore has no standing to assert rights arising thereunder. Apparently, these instruments are one-way streets to the Advisors.

### 3. Common-Law Duties Also Attach

New York imposes fiduciary obligations where one party reposes trust and

reliance in another's expertise. *See Schneider v. Lazard Frères & Co.*, 552 N.Y.S.2d 571, 574 (1st Dep't 1990). Appellees argue that

*Schneider v. Lazard Freres & Co.*, 552 N.Y.S.2d 571, 572 (N.Y. App. Div. 1990), and *Metro. W. Asset Mgmt., LLC U. Magnus Funding,* Ltd., No. 03-CV-5589, 2004 U.S. Dist. LEXIS 11761 (S.D.S.Y. June 24, 2004) are outdated—superseded by *Oddo*. They are not.

*Oddo* itself reaffirmed that a "fiduciary relationship arises between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." 19 N.Y.3d 584, 592-93 (N.Y. 2012). The Court of Appeals found no duty there only because the mezzanine-note plaintiffs had expressly waived reliance and had no other direct fiduciary relationship with the manager. *Id.* at 594. Here, by contrast, the Advisors have conceded liability to "the Holders of the Notes [at least for] acts or omissions constituting bad faith, willful misconduct, gross negligence or reckless disregard in the performance of its obligations [under the PMA], or the terms of the Indenture applicable to the Portfolio Manager." A-5788-89. To the extent that the PMA is binding on NexPoint, it certainly would appear to set limits on the Advisors' duties to it. But those limits are not set at none. And while the Advisors claim here that the PMA creates no such liability "to noteholders," Appellees' Br. 43-44, they cannot deny that is what the PMA says, or that they agreed to it.

As noted previously, the Advisors' effort to reduce the Notes to mere

10

"debt" also fails. The securities in *Oddo* were called "notes" too, but the Court treated some of them—the "capital notes" as equity because their holders "absorbed the first losses" and "shared in profits." *Id*. at 593. The subordinated Notes here mirror that structure. Under the substance-over-form doctrine, NexPoint's risk/reward profile—not the label "note"—controls. *See PepsiCo P.R., Inc. v. Commissioner*, Nos. 13676-09, 13677-09, 2012 Tax Ct. Memo LEXIS 270, at *55 (TC. 2012)  ("[I]t is axiomatic that the substance of a transaction governs for tax purposes. This principle is equally applicable in debt-versus-equity inquiries." (citing *Gilbert v. Comm'r*, 262 F.2d 512, 514 (2d Cir. 1959) (other citations omitted)).

### 4. The Investment Advisers Act Codified Appellees' Duties Under New York Law

Next, the Advisors argue that § 206 of the IAA and SEC Rule 206(4)-8 do not create enforceable duties between investment advisors and investors in a pooled fund. Specifically, they assert that no private right of action is authorized by the IAA, and no state-law tort action can be based on such duties under *Goldstein v. SEC*, 451 F.3d 873 (D.C. Cir. 2006). Appellees' Br. 45-50.

Twice, however, the Supreme Court has held that § 206—and therefore Rule 206(4)-8 (17 C.F.R. § 275.206(4)-8) promulgated pursuant to it—codify pre-existing common-law fiduciary principles. *See SEC v. Capital Gains Research Bureau*, 375 U.S. 180, 191 (1963); *Transamerica Mortg. Advisors (TAMA) v. Lewis*, 444 U.S. 11, 17 (1979). No New York case cited by the

Advisors, and no New York statute, has repudiated the common fiduciary duty codified by the IAA.

To be sure, Congress may not have authorized a private right of action for damages for violations of § 206, but it did authorize another type of private action. *Id.* And it expressed no intention to preempt or otherwise terminate state-law actions to enforce the pre-existing common-law duties it codified. Moreover, state law routinely allows common-law tort claims premised on federal fiduciary standards. *See* Appellants' Br. 38-39 (collecting cases).

The Advisors do not claim otherwise. In fact, they do not even dispute the applicability of Rule 206(4)-8 to them here. Appellees' BR. 47 n.13 (conceding that non-client investors in a pooled fund can sue the fund's advisor for violations of the anti-fraud provisions of the Rule). They merely dispute the semantics: whether such duties should be called "fiduciary" or "anti-fraud."

This distinction is of no moment. NexPoint is such an investor and alleges that those duties have been breached. Call it breach of fiduciary duty. Call it fraud. It has been pleaded. A-9436-37 (knowingly committing waste and self-dealing), A-9452 (artificially inflating fees), 9455 (knowingly misrepresenting expense allocation), A-9467 (self-dealing and waste), A-9475-78 (artifice to defraud, inflate fees and expenses, knowing, willful and in reckless disregard).

### 5. The Advisors Arguments Against Section 206(4) Fail

The Advisors appear to concede that they violated § 206(4) of the Advisors Act, but contend that doing so is not a breach of fiduciary duty:

12

> NexPoint's suggestion that IAA § 206(4)'s antifraud restrictions, 15 U.S.C. § 80b-6(4), which do cover non-clients, *see* 72 Fed. Reg. 44,756, 44,757 (Aug. 9, 2007); *infra*, Part II.B.3, recognizes a pre-existing common law fiduciary duty between investment advisers and non-client investors, is wrong. Rule 206(4)-(8) itself rebuts NexPoint's argument by specifying that fiduciary duty claims under that provision must be grounded in "other law." *Id.* at 44,760; *see id.* at 44,757 ("Rule 206(4)-8 does not create … a fiduciary duty to investors … in a pooled investment vehicle not otherwise imposed by law").

Appellees' Br. 45-46. In other words, the Advisors contend, the SEC has determined that because Rule 206(4)-8 does not impose a fiduciary duty on its own if there is not a source of fiduciary duty other than the IAA, neither the IAA § 206(4) nor Rule 206(4)-8 imposes a fiduciary duty. The error here is two-fold.

*First*, it runs headlong into the Supreme Court's holding that § 206 of the Advisors Act codified fiduciary duties for investment advisors. *See Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 17 (1979) ("§ 206 establishes federal fiduciary standards to govern the conduct of investment advisers.") (quotation marks omitted). Therefore, even without Rule 206(4)-8, the Advisors' breach of § 206(4) (which they now concede is not limited to "clients") is a breach of fiduciary duty.

*Second*, the purpose of Rule 206(4) is prophylactic—the job is to "prevent" violations of § 206(4),[2] which means that there can be instances when a breach of Rule 206(4)-8 would not in itself constitute a violation of § 206(4). As such,

---

[2] Rule 206(4) was passed pursuant to 15 U.S.C. § 80b-6(4)'s authorizing language which provides that "The Commission shall, for the purposes of this paragraph (4) by rules and regulations define, and prescribe means reasonably designed to prevent, such acts, practices, and courses of business as are fraudulent, deceptive, or manipulative.").

13

NexPoint would concede that a breach of Rule 206(4)-8 is not *necessarily* a breach of § 206(4)—but, here, it was. This distinction however explains the SEC's statement that Rule 206(4)-8 does not create a fiduciary duty that is not "otherwise imposed by law." But the Advisors take this too far—there is nothing in the SEC's statement that suggests that § 206(4) cannot be the source of law that "otherwise imposes" the fiduciary duty that could be violated where the violation of Rule 206(4)-8 is also a violation of § 206(4), as it is here.

Given this background, the Advisors' concession that § 206(4) is not limited to clients renders the debate over *Goldstein v. S.E.C.*, 451 F.3d 873 (D.C. Cir. 2006) somewhat moot. *Goldstein* invalidated an SEC rule similar to Rule 206(4)-8 (17 C.F.R. § 275.206(4)-8) passed under 15 U.S.C. § 206(*2*), which the D.C. Circuit noted only related to "clients" of investment advisors. 451 F.3d at 881. The court thus logically rejected a rule that allowed § 206(2) to include the investors in the advised pooled funds since those investors were not the "clients." *Id.* The D.C. Circuit did note in its footnote 6, however, that § 206(*4*) did not use the word "clients" and was thus not so limited. *See id.* at n.6 ("[Section 206] also applies, however, to persons other than clients. *See* 15 U.S.C. § 80b-6(4).")). Section 206(4) lack of a limitation to "clients" was the SEC's basis for passing Rule 206(4)-8 after *Goldstein*.[3] The Advisors' argument that *Goldstein* "held that

---

[3] *See* Prohibition of Fraud by Advisers to Certain Pooled Investment Vehicles, 72 Fed. Reg. 44,756, 44,757 (Aug. 9, 2007) (codified at 17 C.F.R. pt. 275) (noting that proposed rule is in reaction to *Goldstein* and that *Goldstein* only addressed § 206(2), but not § 206(4)).

section 206(4) only permitted investors … [to] sustain an action for fraud against the fund's adviser" is therefore a gross misreading of the case.

The claim should be determined on the merits.

### 6. Terry And Brigade Are Alternatively Liable For Aiding And Abetting

The Advisors contend that NexPoint impermissibly relies on group pleading. Not so. The Counterclaim alleges specifics concerning the roles of Terry and Brigade. A-9466, A-9477, A-9481-82; *cf., e.g., FTFLending, LLC v. Mavrides, Moyal, Packman & Sadkin, LLP*, 165 N.Y.S.3d 692, 692–93 (1st Dep't 2022) (holding that the plaintiff stated a claim as to an attorney at a law firm who allegedly acted negligently while performing legal services on behalf of the firm). And in any event, they are alternatively liable for aiding and abetting.

### C. Certified Questions Are Appropriate

The Advisors contend that certification is inappropriate here. Appellees' Br. at 52-54. But they do not back up their proclamation with substance.

*First*, as to whether New York courts have issued authoritative decisions answering the three proposed questions, the Advisors assert that precedent is "clear," *id.* at 52, and cite three cases in support, *see id.* at 53 (citing *AG Cap. Funding Partners, L.P. v. State St. Bank & Tr. Co.*, 896 N.E.2d 61 (N.Y. 2008); *Oddo Asset Mgmt. v. Barclays Bank PLC*, 973 N.E.2d 735 (N.Y. 2012); and *Lopes v. Rostad*, 384 N.E.2d 673 (N.Y. 1978)). But these cases do not come close to supporting the Advisors' assertions. *AG Capital* dealt with

15

the duties of a single, expressly named indenture trustee, *see* 896 N.E.2d at 63; it never considered the structure here where the indenture vests legal title in one trustee while delegating all day-to-day control over the res to another. *Oddo* certainly does not resolve the equity-like-junior-most-investor question in the Advisors' favor, as NexPoint previously explained (and the Advisors do not substantively refute). And as to *Lopes*, the Advisors appear to have hallucinated. Nowhere does the case deal with the "issue of incorporating federal regulation." Appellees' Br. at 53. In fact, the word "federal" does not even appear in the opinion, *see Lopes*, 384 N.E.2d at 674–76. With a final swing at this ball, the Advisors simply proffer that "existing New York case law on these issues provide[s] sufficient guidance." Appellees' Br. at 53. But they do not explain how. Certainly they have not disproven the first element of certification.

*Second*, the Advisors' suggestion that the proposed questions "do not involve important issues of New York law and public policy" is unpersuasive. *See id.* at 54. New York law governs this dispute. *See* Appellants' Br. at 3 n.2, 22-24. It is the world's preeminent commercial and financial center. *Petróleos de Venez. S.A. v. MUFG Union Bank, N.A.*, 51 F.4th 456, 475 (2d Cir. 2022). Matters concerning the securities law are significant to the public policy of the state. Billions of dollars of structures notes like these are issued every year, and a great many of them select New York law. The importance of these questions cannot feasibly depend on whether the parties involved are New York residents. And "whether New York law" recognizes "a breach of a duty under the IAA as

actionable via a New York fiduciary duty cause of action" is plainly a question of New York, not federal, law.

Next, and curiously, the Advisors assert that certification of these issues would not resolve this appeal because of other (unspecified) arguments in their brief. *See* Appellees' Br. at 54. But this makes no sense. If the New York Court of Appeals accepts any one of the proposed questions and answers it in the affirmative, this Court would by necessity vacate the district court's judgment and remand for further proceedings, thereby resolving the appeal.

The case against certification is not strong. NexPoint respectfully submits that this Court should choose to certify to allow the ultimate authority on New York law to rule definitively on these important issues.

## D.   Alternatively, Appellants Have Standing Under Cayman Law

The Advisors' arguments under Cayman law were not hard to predict and are addressed in NexPoint's opening brief. Appellants' Br. at 45-53. Nonetheless, NexPoint offers two short rejoinders here.

*First*, the Advisors have no real argument against NexPoint's status as a holder of equity. That is why they rely on Cayman law's "emphasis on privity of contract and on official records of a company's relationship with creditors." Appellees' Br. at 27-28. On this basis the Advisors argue that "Cayman courts would not permit creditors to recharacterize themselves . . . in order to take advantage of the unique derivative rights available to shareholders." *Id.* But this argument flies in the face of the well-established principle in Cayman law against

17

"elevat[ing] form over substance." Appellants' Br. at 47. It is undisputed that noteholders like NexPoint are residual beneficiaries with exposure to losses and profits. In other words, it quacks like equity. Under Cayman law, that makes it a duck.

*Second*, the Advisors' arguments only hold water if they construe the pleadings as falling short of allegations of fraud. But that is exceedingly difficult here, given NexPoint's allegations cited above. A-9436-37 (knowingly committing waste and self-dealing), A-9452 (artificially inflating fees), A-9455 (knowingly misrepresenting expense allocation), A-9467 (self-dealing and waste), A-9475-78 (artifice to defraud, inflate fees and expenses, knowing, willful and in reckless disregard). NexPoint submits that knowing, willful, reckless artifices to defraud also quack like fraud.

## E.    Appellees' Rule 23.1 Arguments Are Untimely

The Advisors lodge a newfound objection for the first time in their brief: Appellants cannot prevail because they fail to satisfy the requirements of Federal Rule of Civil Procedure 23.1. Appellees' Br. at 32-33. But the Advisors have waived this argument. "[A R]ule 23.1 defense is usually pleaded or waived like a [R]ule 12(b)(6) defense." *Burghart v. Landau*, 821 F. Supp. 173, 179 (S.D.N.Y.), *aff'd*, 9 F.3d 1538 (2d Cir. 1993); 7C Charles Alan Wright et al., Federal Practice and Procedure § 1836 (3d ed.) ("Like Rule 12(b) motions in other actions, a motion to dismiss for failure to comply with the requirements of Rule 23.1 must be timely or it will be waived."). Appellees cannot sit on this

defense and then raise it for the first time before this Court. *See Fogel v. Chestnutt*, 533 F.2d 731, 738 n.7 (2d Cir. 1975) (Friendly, J.). Through their actions, the Advisors have abandoned any Rule 23.1 argument, and it is therefore not properly before this Court. And even if it somehow were, Plaintiffs substantially complied with it, and at worst, it would simply mean that the Court should remand the case to the district court to permit Appellants to meet the technical pleading requirements (if any are unmet) in the first instance.

## F.  Appellees' Remaining Arguments Are Unavailing

Two other points warrant discussion. *First*, the Advisors maintain that several of NexPoint's claims are barred as duplicative of a no-longer-pending breach-of-contract claim, arguing that the sole basis for these claims stems from alleged contractual obligations. *See* Appellees' Br. at 55-56. But NexPoint predicted and responded to these arguments in its opening brief. Appellants' Br. at 55-56. The Advisors did not respond. Simply insisting that their position is correct without actually confronting Appellants' arguments brings Appellees no closer to prevailing.

*Second*, NexPoint does not concede the dismissal of its unjust enrichment claim. It acknowledges that unjust enrichment is a remedy—and one that ought to be available here for the reasons previously stated. Appellants' BR. at 13.

## III. CONCLUSION

The district court should be reversed.

19

Dated:  August 8, 2025                     Respectfully submitted,

*/s/ Mazin A. Sbaiti*

Mazin A. Sbaiti

Griffin S. Rubin

Sʙᴀɪᴛɪ & Cᴏᴍᴘᴀɴʏ PLLC

2200 Ross Avenue, Suite 4900W

Dallas, Texas 75201

(214) 432-2899

mas@sbaitilaw.com

gsr@sbaitilaw.com

***COUNSEL FOR APPELLANTS
NEXPOINT DIVERSIFIED
REAL ESTATE TRUST AND
NHF TRS, LLC***

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) and the word limit of Fed. R. App. P. 32(a)(7)(A), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4,741 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word with 14 characters per inch and Times New Roman.

Dated: August 8, 2025      */s/ Mazin A. Sbaiti*
                            Mazin A. Sbaiti

## CERTIFICATE OF SERVICE

I, Mazin A. Sbaiti, hereby certify that on this 8th day of August, 2025, I electronically filed the above document with the Clerk of the Court of the United States Court of Appeals for the Second Circuit by using ACMS. I certify that all participants in the case are registered ACMS users and that service will be accomplished by ACMS.

Dated: August 8, 2025          */s/ Mazin A. Sbaiti*
                               Mazin A. Sbaiti